**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TRAY ROBINSON,** :<br>    *Plaintiff*, :<br> :<br>v. :<br> :<br>**HENDERSON,** *et al.*, :<br>    *Defendants*. : | **CIVL ACTION NO. 24-CV-2599** |

<u>**MEMORANDUM**</u>

**KENNEY, J.**                                                                                                                       **AUGUST 29, 2024**

Plaintiff Tray Robinson, a convicted and sentenced prisoner who is currently incarcerated at SCI Phoenix, filed this civil rights action against prison officials and medical staff based on the conditions of his confinement. Robinson primarily alleges that the Defendants subjected him to excessive force, falsely charged him with a disciplinary sanction, failed to provide him with medical care for his injuries, and starved him. He seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Robinson leave to proceed *in forma pauperis*, dismiss certain claims, and permit the claims that pass statutory screening to proceed at this time.

**I.     FACTUAL ALLEGATIONS**[1]

The SAC names as Defendants: (1) four correctional officers at SCI Phoenix, sued in their individual and official capacities—Sergeant Henderson; Correctional Officer Love;

---

[1] The following factual allegations are taken from the Second Amended Complaint ("SAC"), (ECF No. 13), which is the governing pleading in this case. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). Although the SAC is the third pleading that Robinson has submitted in this case, the Court will refer to it as the SAC because it is captioned and docketed that way. Since "the most recently filed amended complaint becomes the operative pleading," *id*., the Court does not consider the initial Complaint, any Amended Complaints, or any other documents in determining whether Robinson has stated a plausible claim. *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) ("[L]iberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings."). The Court adopts the pagination supplied by the CM/ECF docketing system.

Correctional Officer Koshy; and Correctional Officer Jordan; (2) two Superintendents at SCI-Phoenix—Sipple and Terra (together with the Correctional Officers, the "DOC Defendants"); and (3) five medical professionals employed at SCI Phoenix, sued in their individual capacity—Senkowski, Bora, Annino, Ashley, and Ruiz ("Medical Defendants"). (SAC at 1-2.)

The specific events underlying Robinson's claims began on June 14, 2023, when Officer Love engaged Robinson in a conversation about her age that ended with Love "pok[ing] her finger" in Robinson's face, cursing at Robinson, threatening to have Robinson beaten up, screaming, and becoming "volatile." (*Id.* at 2.) Officer Henderson entered the unit to address the confrontation, removed Officer Love from the area, and told Robinson he wanted to talk to him while walking back to his cell. (*Id.*) Henderson then grabbed Robinson's hand, but when Robinson escaped his grasp, Henderson twisted Robinson's arm behind his back and yelled "you fucked up now!" (*Id.*) When Robinson tried to break free, Henderson flipped him to the ground, twisting his back, and then placed him in a headlock, cutting off his oxygen, when he tried to stand up. (*Id.*) Additionally, Officer Koshy jumped on Robinson's back "several" times during this interaction. (*Id.*)

Robinson broke free and returned to his cell, "where he was eventually apprehended and escorted to medical for assessment of injuries." (*Id.*) Robinson contends that he sustained injuries to his back, arm, neck and leg, but that Defendant Ashley "only pressed a finger into his back and stated (he's ok) without any care." (*Id.* at 3, 4.) Robinson was then taken to the restricted housing unit ("RHU") where he was "falsely charged with assault on an officer." (*Id.* at 3.)

On June 17, 2023, after a misconduct hearing, a hearing examiner dismissed the charges against Robinson in part due to evidence from video surveillance. (*Id.*) As a result of the

incident, Robinson was housed in the RHU for a total of eight days.  (*Id.*)  He alleges that Officer Jordan, against whom he previously made a complaint for a "sexually comment," did not feed him any dinner until he filed a grievance on the issue.  (*Id.* at 3.)  Elsewhere in the Complaint, Robinson alleges that Jordan did not feed him at all for the eight-day period he was housed in the RHU.  (*Id.* at 5-6.)

Robinson alleges that the "facility manager" at SCI Phoenix "issues a carte blanch policy authorizing employees to operate at will at this institution causing violations of constitutional and state tort law."  (*Id.* at 3.)  He further alleges that, since filing the instant lawsuit, he has been "targeted" by Love, Henderson, and "co worker's."  (*Id.*)  Specifically, Robinson alleges that Henderson has come onto the block where he is housed "telling other officer's and inmate's alike that plaintiff Robinson is a (rat) snitch" and that Robinson "file's paperwork and is snitching on him and everybody else," which caused Robinson to feel unsafe and has caused him to be "attacked" by other officers.[2]  (*Id.*)  Love and Jordan have also allegedly told other officers and inmates that Robinson is a "snitch."  (*Id.* at 5.)  Further, Robinson contends that Henderson and Love have coworkers who have targeted him and "caused him to be placed in the rhu for a total of (33) time's."  (*Id.* at 3.)

Robinson asserts assorted constitutional and state law claims based on the above allegations.  (*Id.* at 4-8.)  He seeks damages, unspecified "medical treatment for long term injury mental [and] physical," and an "order against retaliation."  (*Id.* at 7-8.)

---

[2] Robinson does not describe this attack.  He refers to "attached exhibit's," (SAC at 3), but he did not include any attachments with his SAC.

3

## II.     STANDARD OF REVIEW

The Court will grant Robinson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the SAC if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, --- F.4th ---, 2024 WL 3820969 (3d Cir. Aug. 15, 2024).  Conclusory and unsupported allegations do not suffice. *Iqbal*, 556 U.S. at 678.  As Robinson is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court is also obligated to dismiss any claims that seek monetary relief from an immune defendant.  28 U.S.C. § 1915(e)(2)(B)(iii).

---

[3] Because Robinson is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

### III. DISCUSSION

Robinson asserts his constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). In other words, "'[e]ach Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.'"[4] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

#### A. Excessive Force

Robinson brings excessive force claims against Love, Henderson, and Koshy based on the force they used to subdue him on June 14, 2023 before bringing him to the RHU. (SAC at 4.) The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*,

---

[4] To the extent Robinson brings claims for money damages against the DOC Defendants, those official capacity claims must be dismissed because they are essentially improper claims for damages against those Defendants' employer, the Pennsylvania Department of Corrections. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)); *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983 (internal citation omitted)).

503 U.S. 1, 8-9 (1992). "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The factors used to determine whether the force applied was excessive include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) ''the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321). The inquiry is driven "by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

Robinson alleges that on his way back to his cell following his confrontation with Love on June 14, 2023, Henderson twisted his arm, flipped him to the ground, twisted his back, and placed him in a headlock, cutting off his oxygen. (SAC at 2.) Koshy, who joined in at some point, allegedly jumped on Robinson's back "several" times while he was being subdued. (*Id.*) As a result of Henderson and Koshy's use of force, Robinson sustained injuries to his back, arm, neck and leg. (*Id.* at 3.) These allegations are sufficient to state excessive force claims against Henderson and Koshy based on their use of force during this incident.

To the contrary, Robinson has not stated an excessive force claim against Love based on the events of June 14, 2023. Love's conduct on this day, according to Robinson, amounted to use of profanity, threats, and pointing her finger in Robinson's face. (SAC at 2.) However, verbal harassment of a prisoner, even if offensive, does not give rise to an independent constitutional violation. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (*per*

6

*curiam*) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) (*per curiam*) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."), *abrogated on other grounds*, *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). The same is true of offensive gestures. *See McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (explaining that threats and gestures do not amount to constitutional violations); *Wright v. O'Hara*, No. 00-1557, 2004 WL 1793018, at *7 (E.D. Pa. Aug. 11, 2004) ("Where plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit." (internal quotations omitted)). Accordingly, the Court will dismiss the excessive force claim against Love. *See Green v. White*, No. 20-4211, 2021 WL 1979434, at *3 (E.D. Pa. May 18, 2021) (excessive force claim based on defendant "poking [plaintiff] in the face with pointed fingernails and spitting at him" did not state an excessive force claim); *Billman v. Corbett*, No. 10-2996, 2011 WL 605814, at *2 (E.D. Pa. Feb. 15, 2011) (allegations that defendant "shook his finger angrily in [plaintiff's] face" did not state an excessive force claim). Furthermore, to the extent Robinson sought to bring claims against any other Defendants for failing to intervene to prevent the use of excessive force against him on June 14, 2023, he has not alleged that any other individuals were present or had an opportunity to intervene, so he has not stated a factual basis for any such claim. *See Smith*, 293 F.3d at 651 ("[A]n officer is only liable if there is a realistic and reasonable opportunity to intervene.").

B.       **Deliberate Indifference to Safety and Retaliation**

Robinson brings Eighth Amendment claims against Love, Henderson, and Jordan for deliberate indifference to his safety based on their behavior after the June 14, 2023 incident.[5] (SAC at 4-5.)  Prison officials have a duty to take reasonable measures to guarantee the safety of inmates.  *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  In that regard, prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'"  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.

To state a plausible failure to protect claim, Robinson must allege that:  (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm.  *See id.*; *Hamilton*, 117 F.3d at 746.  Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).  Robinson must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety."  *Id*. at 135.  "[I]t is not sufficient that the official should have been aware" of the excessive risk.  *Id*. at 125.  Moreover, "an inmate need not wait until an actual attack occurs to obtain relief."  *Moore v. Mann*, 823 F. App'x 92, 96 (3d Cir. 2020) (*per curiam*) (citing cases).

---

[5] To the extent Robinson brings "deliberate indifference" claims against Love, Henderson, and Koshy based on the use of force against him, (*see* SAC at 4-5), those claims are essentially excessive force claims that the Court analyzed above.

8

Liberally construing Robinson's allegations, he contends that since he filed the instant lawsuit, Defendants Henderson, Love, and Jordan have visited the unit where he is housed, called him a "snitch" and a "rat," told others that he filed "paperwork," caused him to be "attacked" by another officer, and indirectly caused him to be housed in the RHU thirty-three times. (SAC at 3.) At this early stage of the litigation, Robinson may proceed on his deliberate indifference claims against Henderson, Love, and Jordan based on these allegations. *See Moore*, 823 F. App'x at 94 (vacating grant of summary judgment on claims that "corrections defendants allegedly began making inflammatory statements about Moore, calling him a pedophile, gay, and a snitch" creating a risk that Moore would be assaulted and causing Moore to be assaulted) *Jackson v. O'Brien*, No. 18-32, 2021 WL 3174687, at *4 (W.D. Pa. July 27, 2021) ("Being labeled a 'snitch' or a 'rat' can be a dangerous designation in prison.").

These allegations could also be construed to raise a retaliation claim. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). A prisoner's filing of a lawsuit or grievance constitutes constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530-31 (3d Cir. 2003). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in

9

lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422. Since Robinson is proceeding on his deliberate indifference claims against Henderson, Love, and Jordan based on their conduct after he filed the instant lawsuit, he may also proceed on a theory that they engaged in this conduct to retaliate against him for filing a lawsuit.

### C. "Respondeat Superior"

Robinson's constitutional claims against Defendants Sipple and Terra are based on allegations that they violated his rights by "knowingly and intentionally, failing in remedy[ing] the wrong" and/or failing to properly screen or train their officers, which Robinson characterizes as "respondeat superior." (SAC at 6.) Supervisors are not liable for alleged constitutional violations committed by their subordinates simply because they employ them, so there is no basis for *respondeat superior* liability here. *See Iqbal*, 556 U.S. at 676 (explaining that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d

307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). This type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Id.* at 317; *see also Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Robinson's allegations against Defendants Sipple and Terra are far too conclusory to state a claim. Robinson does not allege any facts explaining how these Defendants were personally involved in any of the events at issue in his SAC, and their alleged awareness or knowledge of events that occurred is insufficient on its own to state a plausible claim against them. *See Murray v. McCoy*, No. 23-2582, 2024 WL 1328231, at *3 (3d Cir. Mar. 28, 2024) ("Superintendent Ransom's awareness of Murray's allegations concerning C.O. McCoy, without more, is insufficient to establish personal involvement" (citing cases)); *see also Dooley v. Wetzel*,

11

957 F.3d 366, 374 (3d Cir. 2020) (evidence that high level official was sent a copy of documents related to prisoner's claim and official's lack of response did not establish personal involvement, nor did involvement of officials who only reviewed and denied prisoner's grievances). Nor has Robinson identified any specific defects in supervision or training that would amount to deliberate indifference. *See, e.g.*, *Mark v. Patton*, 696 F. App'x 579, 582 (3d Cir. 2017) (plaintiff failed to state a claim for supervisory liability where she "did not allege that any policy created an unreasonable risk of a constitutional violation or that either Patton or Dalmasi was aware of such a risk"); *see also Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (noting that generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or agency are insufficient to allege personal involvement in an underlying constitutional violation). In sum, the Court will dismiss Robinson's constitutional claims against Sipple and Terra because Robinson has not pled a plausible, non-conclusory basis for a § 1983 claim against them.

### D.     False Misconduct and Placement in the RHU

Robinson brings claims against Henderson and Love for falsely charging him with disciplinary infractions that resulted in his eight-day confinement in the RHU, which he describes as "false imprisonment." (SAC at 5.) His allegations on this point are best construed as due process claims.[6] It is well-settled that prisoners have no inherent constitutional right to any particular security classification or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) ("We have held that the Constitution itself does not give

---

[6] To the extent Robinson alludes to the Eighth Amendment, he has not alleged a plausible basis for a claim under that provision with respect to his placement in the RHU. *See, e.g.*, *Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir. 1985) ("To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard.").

rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."). Rather, in the prison context, "[d]ue process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith*, 293 F.3d at 653 (quoting *Sandin*, 515 U.S. at 486).

In deciding whether conditions are atypical and significant for purposes of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017). In determining whether a hardship is atypical or significant, the relevant comparator is the general population. *Id.* at 564. Further, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*), as "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith*, 293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Robinson cannot state a claim based on the filing of false disciplinary charges against him because it is apparent that he received a hearing where he could rebut the charges, which he

did successfully.  *See, e.g.*, *Talley v. Griesmer*, No. 19-3796, 2023 WL 3002742, at *2 (3d Cir. Apr. 19, 2023) (*per curiam*) ("The filing of false disciplinary charges does not violate the Constitution as long as the inmate was granted a hearing and an opportunity to rebut the charges.").  Nor has Robinson stated a claim based on his confinement in the RHU for eight days because he has not described punitive confinement that is atypical in either duration or condition. Indeed, much more serious deprivations have been held not to implicate a liberty interest in this context.  *See Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014) ("[T]he duration in segregated confinement that courts have found does not give rise to a liberty interest ranges up to two and one-half years."); *Fraise v. Terhune*, 283 F.3d 506, 522-23 (3d Cir. 2002) ("Although inmates who are transferred to the STGMU [Security Threat Group Management Unit] face additional restrictions, we hold that the transfer to the STGMU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life."); *Griffin*, 112 F.3d at 708 (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)).  For these reasons, the Court will dismiss Robinson's claims based on the false misconduct and his confinement in the RHU.

        **E.**      **Deprivation of Food**

Robinson brings an Eighth Amendment claim against Jordan for depriving him of food for eight days while he was confined in the RHU until he filed a grievance.  (SAC at 3, 5-6.) "Under the Eighth Amendment, prisoners are entitled to a nutritionally adequate diet."  *Tapp v. Proto*, 718 F. Supp. 2d 598, 621 (E.D. Pa. 2010), *aff'd*, 404 F. App'x 563 (3d Cir. 2010); *see also Farmer*, 511 U.S. at 832 (the Eighth Amendment requires provision of "adequate food" to inmates).  To allege an unconstitutional deprivation of food, the prisoner must allege "both an

objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (citing *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)). Whether the deprivation of food is objectively serious for purposes of establishing a constitutional violation "depends on the amount and duration of the deprivation." *Id*. at 720 (internal quotations omitted). *Compare Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (*per curiam*) ("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation") *with Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1081, 1083 (5th Cir. 1991) (finding that failure to feed a prisoner for twelve consecutive days violated the Eighth Amendment). "[O]nly a substantial deprivation of food to a prisoner" states a viable Eighth Amendment claim. *Rieco v. Moran*, 633 F. App'x 76, 78 (3d Cir. 2015) (*per curiam*) (quoting *Lindsey*, 327 F. App'x at 321).

Robinson alleges that Defendant Jordan did not feed for eight days while he was housed in the RHU, and that this "greatly affected his mental health." (SAC at 7.) It is not entirely clear whether he is alleging that Jordan deprived him of dinner for these eight days, (*id.* at 3), or whether Jordan deprived him of food entirely during this time, (*id.* at 5, 6). Liberally construing the Complaint, however, Robinson has adequately alleged a basis for an Eighth Amendment claim based on his allegations that Jordan refused to feed him for eight days. *See Williams v. Schueler*, 436 F. App'x 687, 688-89 (7th Cir. 2011) (reversing dismissal of Eighth Amendment claim on screening where plaintiff who was unwell was deprived of food for forty-eight hours); *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (holding that "withholding food from [plaintiff] on many occasions for three to five days at a time" was objectively serious for purposes of the Eighth Amendment); *Simmons v. Cook*, 154 F.3d 805, 808 (8th Cir. 1998)

15

(concluding that prisoners established a basis for an Eight Amendment violation where "in the entire thirty-two hour confinement in the maximum security cells, [they] missed four consecutive meals"). *But see Adderly v. Ferrier*, No. 07-507, 2010 WL 2636109, at *4 (W.D. Pa. June 29, 2010) (no Eighth Amendment violation where prisoner was denied breakfast and lunch trays for seven days but received dinner trays during that time and there was no evidence that food provided was nutritionally inadequate).

### F. State Law Claims Against DOC Employees

Robinson brings assorted tort claims pursuant to Pennsylvania law against the DOC Defendants. (SAC at 6-7.) Pennsylvania law provides agencies, officials and employees of the Commonwealth acting within the scope of their duties with sovereign immunity from damages claims subject to exceptions not applicable here. *See* 1 Pa. Cons. Stat. § 2310 (establishing immunity for Commonwealth officials and employees); 42 Pa. Cons. Stat. § 8521 (limiting waiver of immunity to specific exceptions); *id.* § 8522 (setting forth limited exceptions); *Stackhouse v. Pa. State Police*, 892 A.2d 54, 58 (Pa. Commw. Ct. 2006) ("Generally, the Commonwealth and its agencies, officials and employees acting within the scope of their duties are immune from suits for damages."); *see also Pew v. Sherman*, No. 21-949, 2023 WL 8113270, at *5 (M.D. Pa. Nov. 22, 2023) (concluding that defendants were entitled to immunity from claims that they failed to protect plaintiff from assault). Further, "a state officer is shielded from liability for intentional torts committed while acting within the scope of his duties." *Bracey v. Betancourt*, No. 20-6205, 2021 WL 5112246, at *7 (E.D. Pa. Nov. 3, 2021); *see also Poteat v. Lydon*, No. 22-2114, 2023 WL 6620368, at *3 (3d Cir. Oct. 11, 2023) (*per curiam*) ("State sovereign immunity bars these suits against the Commonwealth and its employees acting within the scope of their duties, as the PSP employees were, and the limited negligence exceptions to

16

sovereign immunity do not apply as Poteat alleged only intentional torts."); *Kidd v. Pennsylvania*, 37 F. App'x 588, 592 n.3 (3d Cir. 2002) (summarily dismissing intentional infliction of emotional distress claim because "[t]he Commonwealth, it subdivisions, and its employees acting within the scope of employment enjoy Eleventh Amendment immunity in federal court. The Pennsylvania legislature has not chosen to waive this immunity for intentional torts." (citation omitted)). Accordingly, the Court will dismiss Robinson's claims against the DOC Defendants because they are barred by sovereign immunity. *See Horseman v. Walton*, No. 22-336, 2023 WL 1864882, at *2 (M.D. Pa. Feb. 9, 2023) ("Horseman's state law claims for assault, battery, conversion, intentional infliction of emotional distress and violation of DOC policies are accordingly barred by sovereign immunity").

### G. Deliberate Indifference to Medical Needs

Robinson brings deliberate indifference to medical needs claims against the Medical Defendants. (SAC at 4.) To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). As noted above, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

17

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Further, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) (*per curiam*) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

Robinson contends that he sustained injuries to his back, arm, neck and leg, but that Defendant Ashley "only pressed a finger into his back and stated (he's ok) without any care." (SAC at 3, 4.) He further claims that the remaining Medical Defendants "fail[ed] to administer health care . . . in a reasonable time frame." (*Id.* at 4.) As alleged, it is not clear that Robinson's medical needs amounted to "serious" so as to fall within the scope of the Eighth Amendment. *See Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (*per curiam*) ("[C]uts requiring no more than small bandages do not constitute 'serious medical needs' covered by the Eighth Amendment."); *Paulson v. GEO Grp., Inc.*, No. 19-6013, 2020 WL 703656, at *3 (E.D. Pa. Feb. 11, 2020) ("[S]ymptoms such as bruising, without anything more, are not generally recognized as presenting a serious medical need." (citing cases)); *Stroud v. Boorstein*, 10-3355, 2014 WL 2115499, at *9 (E.D. Pa. May 20, 2014) ("Plaintiff may have experienced mild discomfort as a result of the bruising, bleeding, and head pain, but these symptoms, without others, are not

18

generally recognized as serious medical needs under the *Estelle* framework."). Robinson has also failed to plausibly allege deliberate indifference on behalf of the Medical Defendants. For most of them, he does not describe the nature of his interactions with them, so the Court cannot infer what they knew or did not know in a manner that would suggest whether they acted with deliberate indifference. The only exception is Defendant Ashley, whom Robinson alleges pushed a finger into his back when he went to the medical department and determined that he was "ok." (SAC at 4.) This allegation, however, is consistent with Ashley examining Robinson and concluding that he did not require additional medical treatment at that time despite his injuries. To the extent Robinson believes more treatment was required under the circumstances, he has not provided any additional allegations to support a plausible inference that Ashley acted with deliberate indifference. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Robinson leave to proceed *in forma pauperis* and dismiss his SAC except for: (1) Robinson's excessive force claims against Defendants Henderson and Koshy based on the June 14, 2023 incident; (2) Robinson's deliberate indifference to safety and retaliation claims against Defendants Henderson, Love, and Jordan as described above; and (3) Robinson's deliberate indifference claim against Jordan for depriving him of food for eight days. Since Robinson has already amended his pleading multiple times, the

Court will direct service of his remaining claims at this time pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3). An appropriate Order follows.

                                        **BY THE COURT:**

                                        **/s/ Chad F. Kenney**
                                        _____
                                        **CHAD F. KENNEY, J.**